IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MATTHEW JOHNSON,

      Petitioner,

vs.                          Case No. 4:12cv457-RH/CAS

JULIE L. JONES, Secretary,
Florida Department of Corrections,[1]

      Respondent.
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On September 5, 2012, Petitioner Matthew Johnson, proceeding pro se, filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, with attachments.  Doc. 1.

He also filed a memorandum.  Doc. 3.  On November 1, 2013, Respondent filed an

answer.  Doc. 23.  Respondent also filed exhibits.  Doc. 24.  Petitioner filed a reply on or

about February 17, 2014.  Doc. 28.

---

[1]The Clerk of Court shall substitute Julie L. Jones as Secretary of the Florida
Department of Corrections in place of Michael D. Crews.  Julie Jones became Secretary
on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil
Procedure 25(d).

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## State Court Proceedings

By amended information filed August 9, 2005, in the Second Judicial Circuit, Gadsden County, in case number 05-472CFA, the State of Florida charged Petitioner Matthew Johnson with four counts in connection with events that took place on various occasions between January 1, 2002, and January 24, 2005: (1) sexual battery of a child, M.J., less than twelve years of age by a person eighteen years of age or older, a capital felony, in violation of section 794.011(2)(a), Florida Statutes; (2) lewd or lascivious molestation of a child, M.J., less than twelve years of age by a person eighteen years of age or older, a first degree felony, in violation of section 800.04(5)(b), Florida Statutes; (3) lewd or lascivious molestation of a child, L.J., less than twelve years of age by a person eighteen years of age or older, a first degree felony, in violation of section 800.04(5)(b), Florida Statutes; and (4) lewd or lascivious molestation of a child, S.J., less than twelve years of age by a person eighteen years of age or older, a first degree felony, in violation

of section 800.04(5)(b), Florida Statutes.  Doc. 24 Ex. B at 7-8; *see id.* at 5-6 (original

information).  Petitioner was arrested August 23, 2005.  *Id.* Ex. C.

Johnson proceeded to a jury trial on all four counts on August 31, 2006, and

September 1, 2006.  *Id.* Ex. F (trial transcript).  The victims testified at trial, as well as

several other witnesses.  *Id.* at 2-3.  Johnson did not testify.  *Id.* at 256-58.  At the close of

all evidence, the trial judge granted Johnson's motion for judgment of acquittal (JOA) on

Count 3, involving L.J.  *Id.* at 262-65.  The jury found Johnson guilty as charged on the

remaining three counts.  *Id.* at 361-62; *Id.* Ex. G.  On September 21, 2006, the trial judge

adjudicated Johnson guilty and sentenced him to life in prison on Count 1, and thirty (30)

years in prison as a Prison Releasee Reoffender on Counts 2 and 4, concurrent.  *Id.* Exs. I,

J.

Johnson appealed his judgment and sentence to the First District Court of Appeal

(DCA), assigned case number 1D06-5043.  Doc. 24 Exs. K, L.  Johnson raised two points

on appeal:

> (1) Whether prior, unsworn, hearsay statements of M.J. are sufficient, alone,
> to support convictions for sexual battery and lewd or lascivious molestation
> when M.J. testified at trial that the abuse did not occur and that his prior
> allegations against Johnson were false.

> (2) Whether the trial court erred by admitting hearsay statements of P.J., L.J.,
> and M.J. without making the statutorily required findings of reliability per
> section 90.803(23), Florida Statutes, and, if so, whether those errors
> deprived Johnson of a fair trial as to Count 4.

*Id.* Ex. L at i; *see id.* Ex. N at I, 1.  The State filed an answer brief.  *Id.* Ex. M.  Johnson filed

a reply brief.  *Id.* Ex. N.  In a written opinion issued January 28, 2009, the First DCA

affirmed in part and reversed in part.  *Id.* Ex. O.  In particular, the court found merit in the

first point and reversed Johnson's convictions on Counts 1 and 2, involving victim M.J.,

concluding he was entitled to a JOA on those counts; the court affirmed the conviction and

sentence on Count 4, involving victim S.J.  *Id.*; Johnson v. State, 1 So. 3d 1164 (Fla. 1st

DCA 2009).  On remand, on April 9, 2009, the state trial court rendered an order vacating

Johnson's judgment and sentence on Counts 1 and 2, and providing, on Count 4, "[t]he

judgment and sentence of 30 years incarceration is affirmed and remains in full force and

effect."  Doc. 24 Ex. P.

On April 20, 2009, Johnson filed a motion for post-conviction relief pursuant to

Florida Rule of Criminal Procedure 3.850, raising four grounds.  *Id.* Ex. Q.  By order

rendered June 10, 2009, the state post-conviction trial court summarily denied Grounds 1,

2, 3, and a portion of Ground 4, and ordered the State to respond to the remaining portion

of Ground 4, an ineffective assistance of trial counsel claim.  *Id.* Ex. R.  The State filed a

response, *id.* Ex. S, and Johnson filed a reply, *id.* Ex. T.  An evidentiary hearing took place

on November 20, 2009, on the remaining portion of Ground 4, during which Johnson's

former trial attorneys testified.  *Id.* Ex. U.  In a final order rendered November 30, 2009, the

court denied the Rule 3.850 motion.  *Id.* Ex. V.

Johnson appealed the denial of his Rule 3.850 motion to the First DCA, assigned case number 1D10-927.  *Id.* Exs. W, X.  Johnson, proceeding pro se, filed an initial brief, *id.* Ex. X, and the State filed a notice that it would not file an answer brief, *id.* Ex. Y.  The First DCA affirmed the case per curiam without a written opinion on August 27, 2010, and the mandate issued November 18, 2010.  *Id.* Ex. Z; Johnson v. State, 48 So. 3d 55 (Fla. 1st DCA 2010) (table).

On June 30, 2010, Johnson filed a second Rule 3.850 motion, claiming newly discovered evidence relating to the trial testimony of victim S.J.  Doc. 24 Ex. BB2. Johnson filed an amended motion on September 30, 2010, followed by an addendum and another amendment.  *Id.* Exs. DD, EE, FF.  By order rendered August 4, 2011, the state post-conviction trial court summarily denied relief under Rule 3.850, finding the claim did not constitute newly discovered evidence and, even if it did, "it is not of such nature that it would probably produce acquittal on retrial or yield a less severe sentence."  *Id.* Ex. GG at 3.  The court further found the claim successive because Johnson had already filed a Rule 3.850 motion that was denied on the merits.  *Id.* at 4.  Johnson appealed to the First DCA, assigned case number 1D11-5135, and filed petition for writ of certiorari, which the court considered as an initial brief.  *Id.* Exs. HH, II.  The State filed a notice that it would not file an answer brief.  *Id.* Ex. JJ.  The First DCA per curiam affirmed the case without a written opinion on January 19, 2012; the mandate issued February 14, 2012.  *Id.* Ex. KK; Johnson v. State, 78 So. 3d 538 (Fla. 1st DCA 2012) (table).

In the meantime, on December 7, 2010, Johnson had also filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel on direct appeal.  Doc. 24 Ex. LL.  On January 13, 2011, the First DCA denied relief "on the merits," without further discussion.  *Id.* Ex. MM; Johnson v. State, 51 So. 3d 617 (Fla. 1st DCA 2011).

As indicated above, on September 5, 2012, Johnson filed a § 2254 petition in this Court.  Doc. 1.  Johnson raises six grounds, three of which allege ineffective assistance of counsel (IAC):

(1) IAC – Defense counsel failed to fully investigate "newly discovered evidence" (Johnson's alibi witnesses).  Doc. 1 at 5-6.

(2) IAC – Defense counsel failed to file for a bill of particulars.  *Id.* at 6-8.

(3) Johnson claims "actual innocence" to overcome a procedural bar on filing successive motions.  *Id.* at 8-10.

(4) IAC – Defense counsel failed to sever the lewd and lascivious counts from the sexual battery count.  *Id.* at 10-11.

(5) The trial court erred in not declaring a mistrial because of a mistake in the construction of the verdict forms that resulted in the jury not having an option on Count 4 to find Johnson not guilty.  *Id.* at 11-12.

(6) The cumulative effect of counsel's errors deprived Johnson of his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, and effective representation.  *Id.* at 12-13.

Respondent has filed an answer with exhibits.  Docs. 23 and 24.  Petitioner has filed a reply.  Doc. 28.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633

F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on

the merits in State court proceedings,' § 2254(d), an additional restriction applies."  Cullen

v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant relief unless

the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.  28 U.S.C. § 2254(d).   "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions be

given the benefit of the doubt.'"  Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter,

131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This

Court's review "is limited to the record that was before the state court that adjudicated the

claim on the merits."  Cullen, 131 S.Ct. at 1388.

Relevant here, in Strickland v. Washington, the U.S. Supreme Court adopted a two-

part test for IAC claims:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel was
> not functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show that counsel's

performance fell below an objective standard of reasonableness."  *Id.* at 688.  To

demonstrate prejudice, a defendant "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is

not whether a federal court believes the state court's determination' under the Strickland

standard 'was incorrect but whether that determination was unreasonable – a substantially

higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v.

Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general

standard, a state court has even more latitude to reasonably determine that a defendant

has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to

a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

## **Ground 1: IAC – Failure to Investigate**

In his first ground, Petitioner Johnson asserts his trial counsel rendered ineffective

assistance by failing to fully investigate "newly discovered evidence," specifically alibi

witnesses. Doc. 1 at 5. Johnson states that he told his attorney he had an alibi for the time

of the alleged offense involving S.J. *Id.* In a videotaped interview made in February 2005,

S.J. states the incident occurred "probably only one month or so after [sic] she talked to the

lady in the interview." *Id.* Johnson states he was sentenced to six months in county jail on

July 14, 2004, and "[t]his would put him in jail doing [sic] the months the witness alleges that

he committed the offenses against her." *Id.* As additional information, Johnson points to

"the notarized statements of witnesses brother [J.J.] a potential witness in the room at the

time of the incident and corroboration of the victims mother [Carolyn Kyle] by statement

from (JJ)." *Id.*

Both Johnson and Respondent indicate that Johnson did not present this IAC

ground in state court. *See* Doc. 1 at 6; Doc. 23 at 17. Respondent explains that this

ground constitutes "a hybrid, constructed of different claims presented in different Rule

3.850 post-conviction motions." Doc. 23 at 17. Respondent asserts this ground, as now

presented, is barred as unexhausted and procedurally defaulted and, further, it is based on

factual allegations that are contradictory and contrary to Johnson's prior representations in

state court.  *Id.* at 17-18.  As Respondent indicates, this IAC ground consists of two claims, the failure to investigate (1) Johnson's jail alibi and (2) witnesses J.J. and Carolyn Kyle.  *Id.* at 18.

Assuming it is exhausted, to the extent this ground is based on an alleged failure of defense counsel to investigate, as a possible alibi argument, Johnson's incarceration during a six-month time period in 2004, the trial transcript reflects that defense counsel did know of this period of incarceration.  In particular, defense counsel called as a witness at trial, Petitioner Johnson's father, Henry Lee Johnson, who testified in pertinent part:

> Q Prior to January of 2005 [when the offense involving S.J. occurred], was there any hole in any bathroom wall which you could see inside and see the bathtub?
>
> A No, sir.
>
> Q Now from January of 2002 until January of 2005, which is the time frame that we're talking about here [as alleged in the information], did your son spend any time in jail?
>
> A Yes.
>
> Q Okay.  And do you recall the exact dates that he spent time in jail?
>
> A In January of 2003 he was in jail.  And I'm not sure about – I know he was in jail in January of 2003.  And I believe it was in June or July of 2004 he was in jail.
>
> Q And if I toled you that he got out in September of 2003, does that sounds correct?
>
> A Yeah, that sounds like that's when he got out of jail.
>
> Q And did he spend several months in jail in the calendar year 2004, from July to November of 2004?

A He was in jail.

Doc. 24 Ex. F at 251.  Defense counsel also argued in closing that doubt existed

regarding whether the offense against S.J. occurred because of the timing and Johnson's

incarceration.  *Id.* at 322 ("And you've heard from multiple witnesses, I believe it was on the

tape, I believe it was – I know it was said by Henry Johnson.  My son was in jail for the

majority of 2004, and for part of 2003.  So, let's step back a minute. [S.J.]'s time frame,

could it have even happened?  If he's not physically capable, or physically able to be at the

house where she said well, it happened, and I was about this age, and it was in this year or

that year.  Lots of doubts . . . .").

　　　　To the extent this ground is based on defense counsel's alleged failure to

investigate witnesses J.J., victim S.J.'s brother, and Carolyn Kyle, victim S.J.'s mother,

Johnson did present a claim of "newly discovered evidence" regarding these witnesses in

a second Rule 3.850 motion he filed in state court in June 2010.  Doc. 24 Ex. BB2 at 4-5.

In that motion, Johnson alleged:

> 　　　The attached notarized affidavit of [J.J.] (Exhibit A) and Carolyn Kyle, (Exhibit B) are the bases of Defendant's Newly Discovered Evidence Claims.
>
> 　　　[J.J.] is the brother of the alleged victim [S.J.].  In the sworn affidavit provided by [J.J.], he **avers under oath to have <u>not witnessed [S.J.] touching Mathew Johnson (defendant) in the private area</u>**.  This statement is relevant in that it directly conflicts with that of [S.J.]'s trial testimony, and further supports the Defendant's not guilty defense.
>
> 　　　Carolyn Kyle, mother of [J.J.] avers that her son informed her **he <u>didn't witness</u> that [S.J.] touch Mathew Johnson's private area**.  Ms.

Kyle's testimony supports that of [J.J.]'s, and is corroborative of Defendants defense.

*Id.* at 5.  The attached affidavit of J.J., dated March 22, 2010, provides:

> I [J.J.] did not see [S.J.] touch Matthew Johnson's private area and I would
> have given a statement stating that fact if I was allowed by an officer but I
> wasn't.

*Id.* at 10.  The attached affidavit of Ms. Kyle, dated March 22, 2010, provides:

> I Carolyn Kyle [J.J.] mother told me he didn't not witness that [S.J.] touch
> Matthew Johnson's private area.

*Id.* at 12.  In response, the state trial court rendered an order July 15, 2010, providing:

> The motion and affidavit filed do not state a cause of action.  There is no
> sworn allegation of who [J.J.] is, his age, competency to testify, or details of
> how he would be in a position to witness whether the crime did or did not
> occur.  The victim never alleged anyone saw the crime. [J.J.] did not testify at
> trial, so this is not a recantation situation.  Without more, the affidavit of [J.J.]
> appears irrelevant.  Under no circumstances would the testimony as
> proffered in the affidavit affect the verdict.  (Tr. 221-239)

*Id.* Ex. CC.  The court allowed Johnson ninety (90) days to amend his motion and attached

the referenced pages of the trial transcript, which included S.J.'s testimony.  *Id.*

Johnson filed an amended motion on September 30, 2010.  *Id.* Ex. DD.  He

subsequently filed a supporting addendum, *id.* Ex. EE, and an amendment, *id.* Ex. FF.  By

order rendered August 4, 2011, the state trial court denied the amended motion for post-

conviction relief, finding Johnson had not stated a claim for newly discovered evidence,

and, even if he had, the evidence probably would not result in an acquittal or retrial or a

less severe sentence, and, further, the motion was successive:

Asserting that he is entitled to a new trial, Defendant raises a claim of newly discovered evidence relating to the trial testimony of the victim, [S.J.], who testified that her brother was in the room at the time Defendant made her touch him inappropriately.  Attached to the motions are the sworn affidavit of [J.J.], the victim's brother, stating that he did not witness [S.J.] touching Defendant, and another sworn affidavit by [J.J.]'s mother, Carolyn Kyle, stating that her son told her he did not witness [S.J.] touching Defendant. Defendant claims he and his counsel were unaware of this evidence prior to trial, were unaware that [S.J.] would provide false testimony at trial, and could not have discovered this earlier because of the sensitive nature of the case. Defendant alleges that these affidavits directly refute the victim's trial testimony and establish doubt that the incident ever occurred.

To qualify as newly discovered evidence, the asserted facts must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence.  *Davis v. State*, 26 So. 3d 519, 526 (Fla. 2009).  In order to provide relief, the newly discovered evidence must be of such nature that it would probably produce acquittal on retrial or yield a less severe sentence.  *Id.*  Newly discovered evidence satisfies the second prong of this test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability."  *Id.*, *citing Jones v. State*, 709 So. 2d 512, 526 (Fla. 1998).  In applying this two-prong test, the postconviction trial court must consider all admissible newly discovered evidence and evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial, including whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence.  *Id.*

This Court finds that Defendant's claim does not constitute newly discovered evidence because Defendant or his counsel could have known prior to trial of the fact that [S.J.]'s brother was present at the time of the incident but did not witness anything.  The Forensic Interview Summary of [S.J.]'s CPT interview of Feb. 17, 2005, was filed in the Court file and provided to Defendant on Aug. 22, 2006, as an attachment to the State's Notice Pursuant to Florida Statutes 90.803(23) advising of its intent to present testimony concerning out-of-court statements by the victims, including [S.J.].  *Exh. 4 - 8/22/06 Notice Pursuant to Florida Statutes 90.803(23), w/partial attachment.*  As stated in the summary, [S.J.] related the following during her interview: "[S.J.]'s brother was in the room but he didn't see what happened."  *Exh. 4, p. 2 of [S.J.]'s Interview Summary.*

Thus, Defendant and his counsel had knowledge of this fact prior to the trial, which took place on Sept. 1, 2006.

Even if the facts stated in the affidavits constituted newly discovered evidence, it is not of such a nature that it would probably produce acquittal on retrial or yield a less severe sentence.  In fact, the testimony of [J.J.] and his mother as proffered in the affidavits would likely have had no effect on the verdict at all.  Contrary to Defendant's statement that [S.J.] "in the presence of the jury testified that [J.J.] witnessed the alleged crime when it occurred," [S.J.]'s testimony at trial regarding this issue consisted of stating "my brother and my cousin" in answer to the question "was there anybody else around in the room at that time?"  *Exh. 5 - Trial Trans., pp. 227-28.*  She did not name either one or elaborate as to whether either of them witnessed anything.  *Id.*  Therefore, the statements contained in the affidavits that [J.J.] did not see Defendant touch [S.J.] do not refute [S.J.]'s detailed trial testimony or establish doubt that the incident occurred.  *Exh. 5 at pp. 222-38.*  Just because [J.J.] did not see anything, as he avers, does not mean that nothing happened.  While impeachment evidence may suffice as newly discovered evidence, *Robinson v. State*, 711 So. 2d 619, 622-23 (Fla. 2d DCA 1998), in the instant case, the impeachment is so slight, if it exists at all, that it would not serve to weaken the case against Defendant.

Further, Defendant's claim is successive because he has already filed a 3.850 motion that was denied on the merits.  *Exhs. 1, 2 & 3.*  Even if, as Defendant claims, he did not know prior to trial that [S.J.]'s brother was present at the time of the incident, he found out during [S.J.]'s trial testimony and was aware of it when he filed his first 3.850 motion.  Therefore, Defendant could have raised this claim in his first motion, but fails to state why he did not.  Accordingly, Defendant's second Motion for Postconviction Relief and his Amended Motion for Postconviction Relief are procedurally barred as successive and an abuse of process.  Fla. R. Crim. P. 3.850(f); *Owen v. Crosby*, 854 So. 2d 182, 187 (Fla. 2003) (holding that a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion).  Defendant has not established entitlement to a new trial or an evidentiary hearing based on this claim.

*Id*. Ex. GG at 63-66.  The court also indicated that, in the supporting addendum, Johnson

had raised two other issues, an IAC claim – which appears to be the second part of this

ground – and an actual innocence claim, but neither had merit:

> Defendant's Addendum in Support of Rule 3.850 Motion Filed Approximately July 2010, filed on March 16, 2011, raises two issues, neither of which has merit.  In Issue One, Defendant alleges ineffective assistance of counsel for failure to discover the testimony set forth in the affidavits of [J.J.] and Carolyn Kyle, claiming their trial testimony would have impeached [S.J.] and he would have been found not guilty.  In order for Defendant to prevail on an ineffective assistance of counsel claim, he must demonstrate counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish prejudice, Defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Defendant cannot satisfy the prejudice requirement because, as described above, the testimony of [J.J.] and his mother as proffered in the affidavits would likely have had no effect on the verdict.

*Id*. at 66.  The state court's finding regarding the second issue, the actual innocence claim,

is quoted in the analysis of Ground 3, *infra*.  Johnson appealed the order, and the First

DCA per curiam affirmed the case without an opinion.  *Id*. Ex. KK; Johnson v. State, 78 So.

3d 538 (Fla. 1st DCA 2012) (table).  These rulings are entitled to AEDPA deference and

review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); Cullen,

131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright v. Sec'y of Dep't of Corr., 278

F.3d 1245, 1255 (11th Cir. 2002).

The record supports the state court's findings.  In particular, during the trial, S.J.

testified, in pertinent part:

Q . . . So you're in the living room and he has you rub his thing.  Is it on the outside of his – or inside his clothes, outside his clothes, clothes on, clothes off?

A He had on boxers and he took it out.

Q He had boxers, like boxer shorts?

A Yes, sir.

Q Okay.  And you say he took his thing out?

A Yes, sir.

Q Okay.  And did your hand actually touch it and rub it up and down?

A Yes, sir.

Q Okay.  Was there anybody else around in the room at that time?

A My brother and my cousin.

Q How old – is your brother younger than you are?

A He's 10.

Doc. 24 Ex. F at 227.  Thus, as the state post-conviction trial court found, S.J. did not testify that her brother witnessed the offense; she testified only that he was in the room when it occurred.  As that court found, J.J.'s affidavit, which stated he did not witness S.J. touching Petitioner, does not contradict S.J.'s testimony – just because J.J. did not see anything does not mean it did not happen.  The state court's determination, under Strickland, that Johnson was not prejudiced by any deficient performance of counsel, was not unreasonable.

Based on the foregoing, Johnson has not shown defense counsel provided ineffective assistance by failing to investigate either his jail alibi or witnesses.  Regarding the jail alibi, defense counsel did know this information, brought it out at trial, and argued it supported the defense position.  Regarding the potential witnesses, J.J. and Carolyn Kyle, Johnson has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## <u>Ground 2</u>: IAC – Failure to File for Bill of Particulars

In his second ground, Johnson asserts his trial counsel rendered ineffective assistance by not moving for a statement of particulars pursuant to the Florida Rules of Criminal Procedure.  Doc. 1 at 6-7.  Johnson asserts "[t]here could have and should have been a statement attesting to a more precise time of offense" as the victim was twelve years old when the alleged incident(s) occurred and thirteen at the time she testified.  *Id.* at 7.  Johnson asserts "[t]he time was never established and [t]here was no objection to the extreme range of time, (3 years) given for the occurrences of these alleged offenses."  *Id.* at 7-8.  Johnson alleges this prejudiced him by impeding the presentation of an adequate defense.  *Id.* at 8.

Both Johnson and Respondent indicate Johnson did not present this IAC ground in state court.  *See* Doc. 1 at 8; Doc. 23 at 38.  Thus, the ground is unexhausted and procedurally defaulted.

Even assuming it was exhausted, or that Johnson has shown cause and prejudice for the default, the ground lacks merit.  Concerning S.J.'s age, the record before the state trial court reflects her date of birth as February 21, 1993.  Doc. 24 Ex. F at 232.  S.J. testified regarding her age at the time of the offense and that, other than pinpointing that she was probably 11 years old when it occurred and probably "a month or so" before the CPT videotaped interview (which occurred February 17, 2005), she could not say exactly what day it happened:

> Q Okay.  When these things occurred – when this thing – it happened one time, right?
>
> A Yes, sir.
>
> Q Okay.  Now, do you know if you had turned 12 already or were you still 11?
>
> A I don't know.  I probably turned 12.
>
> Q You think you were 12?
>
> A (Witness nodding head)
>
> Q Okay.  So how old are you now?
>
> A 13.
>
> Q Okay.  So 12 would be just one year ago?
>
> A Yes, sir.

Q Do you think it happened just one year ago or more than one year ago?

A It probably had been when I was 11, I think.

Q Okay.  When you were 11?  You're 13 now.  A year ago, when all of this came out, you had just turned 12; right?

A Yes, sir.

Q Okay.  So it happened – about how long before – let me see if I can make this time frame.  You remember going and talking to the lady at the Child Protection Team in Tallahassee?

A Yes, sir.

Q With the video tape?

A Yes, sir.

Q About how long?  Can you give us an idea how long before you talked to the lady on the video tape that he had you touch his thing in the living room?

A What did you say?

Q Pardon?

A I can't hear you.

Q Can you give me some idea, was it the day before, a week before, months before?

A It was probably months ago.

Q Okay.  Before you talked to the lady on the video?

A I think so.

Q Okay.  It hadn't just happened that same day; correct?

A No, sir.

> Q Okay.  So it happened sometime before you talked to her on the video tape?
>
> A Yes, sir.
>
> Q And you think it was like a month or so?
>
> A Yes, sir.
>
> Q Okay.  But when it happened, you don't have any – you can't tell us exactly what day it was or anything like that?
>
> A No, sir.

*Id.* at 232-34.  As Johnson indicates, the victim was thirteen years old when she testified at trial on August 31, 2006.  *See id.* at 1, 222, 233, 266.  From the trial transcript, victim S.J. was eleven years old when the offense occurred and on February 17, 2005, the date of her CPT interview.  *See id.* at 232-34.  Thus, concerning the victim's age, nothing indicates a bill of particulars would have aided Johnson in his defense.

Johnson also argues that "the extreme range of time" in the information prejudiced him by impeding the presentation of an adequate defense but he does not explain how he was prejudiced.  Specifically, the information charged the following concerning victim S.J.:

> COUNT IV: On various occasions between January 1, 2002 and January 24, 2005, did unlawfully intentionally touch in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of S.J., a person less than 12 years of age, or forced or enticed the child to so touch him, and the defendant was 18 years of age or older, contrary to Section 800.04(5)(b), Florida Statutes.

Doc. 24 Ex. B at 6.  As indicated above, however, S.J. testified the offense occurred "like a month or so" before the CPT interview, which took place February 17, 2005.  Moreover,

a review of the trial transcript reflects that defense counsel, in closing argument, actually

used the large time frame to support the defense position:

> [S.J.] This was never reported.  This came out of the clear blue.
> She's somebody that's not one of Matthew Johnson's children.  But she
> never reported any allegations.  And let's look at it real carefully.  and one of
> the issues, because of the elements of the crime that Mr. Combs [the
> prosecutor] mentioned is important, is the age of the alleged victim.
>
> She couldn't get her time frame straight either.  How old is she now?
> She knows that answer.  How old was she back in January of 2005.  Was
> she 11, was she 12?  And that's fine, I don't want to make a major issue out
> of that.  It's important for the element, but the report happened to the
> investigative team, and that's what Mr. Combs mentioned.  So the issue
> really isn't how old was she, the issue is, when did this alleged event happen.
>
> And by the way, contrary to anything else you may have heard, she's
> now saying well, it happened once.  Just one time in the living room.  Mr.
> Combs, that I recall, said well, you know, these events have all been charged
> over a long time frame because there are so many different events, you
> know, and there's all these different things and, you know, it may have
> happened a little here, a little there.  She's in here telling you now, it was one
> time.
>
> . . . .
>
> Another issue about the time frame was important, and I'm going to
> tie that up here right now.  Henry Johnson . . . came in here as the father of
> Matthew Johnson.  But he came to give you some more information.
>
> Number one, we needed to clear some things about this whole
> bathroom. . . . Because Mr. Johnson came in here and told you, yeah, some
> repairs were made to that.
>
> . . . .
>
> But again, let's go back to the whole point here.  Why is that even
> important?  Why is that even important?  But it does cast doubt on [S.J.]

Because [S.J.] is the one that told you all the tales about being looked at in the tub.

Well, if you can't physically see the tub, how truthful is that?  What was that meant to do?  Make Mr. Johnson, Matthew Johnson, look bad.

Now, there's another interesting question that has come up with respect to [S.J.] And Henry Johnson testified to this.  That over a period of time, Matthew Johnson wasn't physically able to even commit any of the things, the one thing that [S.J.] one time said happened or, you know, whenever this bathroom situation she alleges to have occurred, because he wasn't at the house.

And you've heard from multiple witnesses, I believe it was on the tape, I believe it was – I know it was said by Henry Johnson.  My son was in jail for the majority of 2004, and for part of 2003.  So, let's step back a minute. [S.J.]'s time frame, could it have even happened?  If he's not physically capable, or physically able to be at the house where she said well, it happened, and I was about this age, and it was in this year or that year.

Lots of doubts, Ladies and Gentlemen.  Lots of doubts. . . .

*Id.* Ex. F at 318-22; *see, e.g., id.* at 307 (closing argument: "The allegations in this case,

according to Mr. Mathers were two years ago, back in 2003, very, very, very odd time

frame in terms of when this happened.  Again, remember, the report was in 2005, January,

and we're going all the way back to 2003."), 310-11 ("And she interviewed the children, but

she didn't actually interview anyone else that would give you the full picture.  Interestingly

enough on the time frame issue, again, we have this, when did it happen?  Two years ago

up to a year ago.  It's very unclear in 2005 when the children sit for the interviews what the

time frame we're even talking about here.  And what event happened, if it happened, when

did it happen.  One of the clever questions Ms. Ellis asked was, what was the weather like

outside?  Can't even give that.  Can't even establish time of year.  Can't establish in school, out of school, any of those sorts of time frames.").

Based on the foregoing, Johnson has not shown defense counsel provided ineffective assistance by not filing for a bill of particulars regarding the age of S.J. or the time frame for the offense.  Indeed, the record reflects defense counsel used the large time frame in support of the defense position.  Johnson has not shown that if defense counsel had filed a motion for a statement of particulars, the trial judge would have granted the motion and the jury would have acquitted him of the charge involving S.J.  *See, e.g.*, Rockett v. Sec'y, Dep't of Corr., No. 8:08cv1417-T-23EAJ, 2014 WL 3809146 at *21 (M.D. Fla. Aug. 1, 2014) (order by district judge denying § 2254 petition that included ground alleging IAC for failure to file pre-trial motion for bill of particulars on burglary charge: "Rockett presents no evidence substantiating his allegation that the information, which charged Rockett with unlawfully entering or remaining in the victim's residence with the 'intent to commit an offense therein,' was so vague as to prevent him from preparing a defense.  Rockett fails to show that if counsel had filed a motion for a statement of particulars, the trial judge would have granted the motion and the jury would have acquitted him of the burglary charge.  Rockett's failure to establish prejudice precludes relief on this ground of ineffective assistance of counsel because the requirements of Strickland remain unsatisfied.").  This ground should be denied.

## **Ground 3**: Actual Innocence

In his third ground, Johnson asserts he is actually innocent of the charges against him and contends he has unrefuted evidence that contradicts the State's evidence. Doc. 1 at 8. Johnson "claims ineffective assistance of trial counsel's deficient performance and proves to invalidate Petitioner's rights to fair and impartial trial." *Id.* Specifically, Johnson indicates he "has corroborative evidence that the statements concerning the offenses that happened to the witness were not factual" and explains:

> In the testimony of the witness (SJ) (Exhibit D, TT, page 227-229) she makes an accusation that the Petitioner had her "touch his thing." She informed the Prosecutor that there [was] ~~two~~ one other [person] in the room at the time a brother ~~and a cousin~~; however this information was not brought out in trial. The brother provided a statement as newly discovered "impeachment" evidence that this did not take place. The brother was in the room at the time and cognizable of all actions, This was established by the CPT-Interview[.] The State in its response to this evidence said that (SJ) did not name either witness (she indicated that her brother ~~and cousin~~ were in the room) or elaborate as to whether either if them witnessed anything. Petitioner contends that she was never asked that question. This was counsel's deficiency he also should have investigated the other potential witnesses in the room for exculpatory evidence. Petitioner was not allowed to argue this issue because it was deemed successive, and noted he should have raised this in the previous 3.850 motion against a procedural bar. This prejudiced the Petitioner because it did not allow the jury to hear all the information for a decision of all the evidence available. This is cause for further proceedings on this matter.

*Id.* at 9.

To the extent Johnson argues, under this ground, that counsel rendered ineffective assistance for not investigating J.J., S.J.'s brother who was in the room when the incident occurred, this argument was addressed in the analysis of Ground 1, *supra*, and should be rejected. As referenced in the analysis of Ground 1, and as Respondent indicates,

Johnson presented a claim of "actual innocence" in state court as "Addendum Issue Two"

in his "Addendum in Support of Rule 3.850 Motion Filed Approximately July 2010." Doc.

23 at 46; Doc. 24 Ex. EE.  The state court addressed this claim and made findings:

> In Issue Two of the Addendum, Defendant alleges that his inability to
> present the testimony of [J.J.] and Carolyn Kyle at trial resulted in a
> miscarriage of justice because he is actually innocent, and that if the jury had
> heard the testimony, he would have been acquitted.  This is not a claim
> cognizable in a 3.850 motion; further, such a motion would be procedurally
> barred as successive as previously stated.  As to Defendant's argument that
> his actual innocence overcomes any procedural bars to his claims, "actual
> innocence" is a standard that applies to federal habeas petitioners
> attempting to avoid a procedural bar to constitutional claims, and does not
> apply in the instant case.  Schlup v. Delo, 513 U.S. 298 (1995).

Doc. 24 Ex. GG at 66.  As quoted in the analysis of Ground 1, the state court had also

found that the statement in J.J.'s affidavit was "not of such a nature that it would probably

produce acquittal on retrial or yield a less severe sentence" and "[i]n fact, the testimony of

[J.J.] and his mother as proffered in the affidavits would likely have had no effect on the

verdict at all."  *Id.* at 64-65.  As the state court found, "[j]ust because [J.J.] did not see

anything, as he avers, does not mean that nothing happened." *Id.* at 65.  Moreover, as the

state court explained, J.J.'s statement does not constitute newly discovered evidence

because Johnson and his attorneys knew of J.J.'s presence in the room when the offense

occurred, prior to the trial and also during the trial when S.J. testified.  *Id.* at 64.  *See id.* at

105-09 (Notice Pursuant to Florida Statutes 90.803(23), with attached Forensic Interview

Summary, dated March 15, 2005, which includes statement, "[S.J.]'s brother was in the

room but he didn't see what happened."); Ex. F at 227 (portion S.J.'s trial testimony, quoted above, that her brother was in the room at the time of the incident).

Finally, as the state court also explained, "actual innocence" is a claim, if proved in federal habeas, that allows a petitioner to overcome a procedural bar so that the court may consider petitioner's federal constitutional claim on the merits.  *See, e.g.*, McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013).  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  Herrera v. Collins, 506 U.S. 390, 400 (1993); *see* McQuiggin, 133 S.Ct. at 1931 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.").  *See also* Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (explaining, after declining to consider freestanding claim of actual innocence because it did not fall within the certificate of appealability order, "our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases").

Based on the foregoing, Johnson has not shown entitlement to federal habeas relief.  Johnson has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### <u>Ground 4</u>: IAC – Failure to Sever Counts

In his fourth ground, Johnson asserts counsel rendered ineffective assistance by not

seeking severance of the lewd and lascivious counts from the sexual battery counts.  Doc.

1 at 10.  Johnson asserts:

> The Defendant contends that when charges are based upon similar
> but separate episodes which are connected only by allegations of defendant
> alleged guilt, joinder or consolidation as in this case was improper.  The
> Defendant contends that in this child sexual molestation case, motion to
> sever should have been granted where offenses occurred at different times
> and places, involving different victims.  The offenses in this case were
> related only in that they were sex offenses occurring within January 2002 and
> January 2005.  The Defendant's alleged conduct was not directly connected
> by evidence to acts involving the three minors and it could not reasonably be
> inferred that continuing misconduct led to any of the previous actions.  The
> Defendant contends that the standard for determining whether offenses are
> properly consolidated for trial is vastly different from the standard of when
> evidence of a second collateral crime may be introduced.  If it was
> determined that this joinder would constitute harmless error in a familial
> sexual battery case where the misjoined offenses would be admissible as
> collateral crime evidence, then the distinctive legal standards concerning
> each would run together.  The Defendant contends that this action by the trial
> court has prejudiced the defendant.  In light of the Defendant's legal
> consequences flowing from jointly trying separate offenses as opposed to
> admitting collateral crime evidence, the Defendant contends that when
> collateral crime evidence is introduced, evidence of a separate crime should
> not become a "feature" of the trial.

*Id.*

As Respondent indicates, Johnson included this claim within Ground 4 of his first

Rule 3.850 motion.  Doc. 23 at 51; *see* Doc. 24 Ex. Q at 22, Ex. R.  The state court found:

> Defendant alleges trial counsel "failed to follow up on a motion for
> severance."  Defense counsel Armando Garcia filed a motion to sever on
> 1/20/06.  (*Motion to Sever Counts*).  At trial, Defendant was represented by

Jeremy Cohen and Stephen Black.  (*Tr. 1*) This motion was never ruled on
by the Court, on the record, as far as this Court has been able to determine.
If the motion was abandoned for strategical reasons, by any of the counsel,
then an evidentiary hearing may be necessary, since the Court cannot locate
any record discussion of this motion.  The Court renders no opinion on
whether other legal reasons exist as to why this ground should not be
summarily denied.

Doc. 24 Ex. R.  The state post-conviction court held an evidentiary hearing on this claim on

November 20, 2009, during which Johnson's trial attorneys, Jeremy Cohen and Stephen

Black, testified.  *Id.* Ex. U.  In a final order rendered November 30, 2009, the court denied

the claim, making the following findings:

> 2. . . . This Court, after evidentiary hearing, denies this Ground.  For
> this analysis, this Court assumes the trial court would have granted
> severance, regardless of the reason, had a ruling been pursued.  This Court
> also assumes Defendant did not specifically agree to the strategy, or he was
> not fully aware of it, or he did not fully understand the legal risks of severance
> versus nonseverance.  This would have preferably been the case, but this
> fact does not equal ineffective assistance of counsel.
>
> 3.  The Court finds the testimony of defense attorneys, Mr. Cohen and
> Mr. Black, to be highly credible.  Most importantly, the attorneys knew of the
> previously filed motion to sever by Mr. Garcia.  The attorneys made a
> thoughtful, strategical decision to not pursue severance.  In this Court's
> extensive trial experience, it is more usual than not, that severance is
> avoided in this exact type case, for the same reasons set forth by defense
> counsel at this evidentiary hearing.  Therefore, it is plain that a reasonably
> effective lawyer would have made the same strategical decision, although it
> is equally clear that another reasonable lawyer might have made a different
> decision.  Ironically, one logical view is that this strategy actually bore fruit.
> Namely, the case proceeded on 4 counts; Defendant won 1 count at trial;
> and won 2 other counts on appeal on the insufficiency of evidence.
> Therefore, out of one trial exposure, Defendant prevailed on 3 out of 4
> counts.  In contrast, severance would have resulted in 4 chances for the state
> to prevail, which means the state improves its odds with experience and a
> new jury at each trial.  Also, at the time of each trial, there was the risk that
> Williams Rule evidence on one or more of the other counts would have been

admitted anyway, thereby diluting, or even eliminating, the arguable
advantage of severance.

    4.  This Court is doubtful that it needed to conduct an evidentiary
hearing, based on the Court's extensive experience, which suggested an
obvious lack of omission that fell below the applicable standard of
performance.  See **Vathis v. State**, 859 So. 2d 517 (Fla. 1st DCA 2003),
review dismissed, 887 So. 2d 1290 (Fla. 2004).  However, in an abundance
of caution, it was held.  After the evidentiary hearing, there is no doubt that
trial counsel actually exercised a strategical decision.  It is beyond quesation
that the strategy was a common one selected.  Therefore, there is no
ineffective assistance of counsel.

*Id.* Ex. V at 125-26.  On appeal, Johnson filed a pro se brief that included a point

challenging the denial of this claim.  *Id.* Ex. X.  The First DCA per curiam affirmed the case

without an opinion.  *Id.* Ex. Z.  These rulings are entitled to AEDPA deference and review

is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct.

at 1402; <u>Richter</u>, 131 S. Ct. at 784-85; <u>Wright</u>, 278 F.3d at 1255.

    The record supports the factual findings of the state post-conviction trial court.  In

particular, during the evidentiary hearing on the Rule 3.850 motion, Mr. Cohen testified that

before he and his partner, Mr. Black, were retained, Armando Garcia had represented

Johnson and filed a motion to sever the counts.  Doc. 24 Ex. U at 7.  Mr. Cohen testified

that after discovery and evaluation of the case, they decided not to seek severance:

    There were a number of allegations, a number of victims, and a number of
legal theories.  The focus of which, as you may recall, there were major
issues out there in terms of confrontation clause, and some of the video tape
evidence and CPT evidence, and things of that nature.  The focus that we
decided to pursue was to pursue all of the claims together.  There was a lot
of confusion in terms of the testimony and some of the major inconsistencies
among the witnesses.  You know, time and everything was all over the place.

And as I mentioned before, the Crawford case and the Davis case had just recently been decided by the U.S. Supreme Court so we mainly focused our attack on those issues.

*Id.* at 8-9.  Mr. Cohen explained that they filed "a very extensive motion" challenging the admissibility, under section 803.23, Florida Statutes, of the testimony from the Child Protection Team and statements of the children.  *Id.* at 9.  Once they obtained those rulings, they evaluated the strength of the case and decided to proceed with the charges tried together:

Q . . . And did you make an evaluation as to the strengths or weaknesses of proceeding as it was structured with the three children or going ahead with a motion to sever and to teach – to treat each case individually?

A  Part of it was based on the factual inconsistencies as we saw it, an innocence theory of Mr. Johnson.  And part of it was on the kind of collective nature of all of the testimony coming in from all over the place.  In addition, under concerns we had with Williams rule and some other issues, whether a motion to sever would actually keep that information out, was itself in doubt.

Q Were you aware then that if a motion to sever had been granted that the same evidence may have been presented or the State would be offering that as Williams rule evidence in the course of three singular trials as opposed to one collective trial?

A Well, right, it could have been three singular, it could have been the two younger victims, and the one older.  There's a whole series of variables that we evaluated when that happened.

Q In your overall evaluation of the case after you'd finished your discovery, you used the word, the confusion involving, and the inconsistencies involving the children.  Did you view that as a strength for the defense to try to present to the jury that there was this confusion in the family and the sequencing and dates and things of this nature?

A Oh, absolutely.  Not just with the children but also the way the reports came in with some of the – I believe there were teachers and counselors that came through, yes.  And it was a strategic decision we made at that point.

*Id.* at 10-11.  Mr. Cohen testified it was a tactical decision:

Q Mr. Cohen, in looking at all of the evidence that had been presented to you in the course of the discovery then, you made a tactical decision that collective – if the State is going to present all of the evidence that that gave you some opportunities to challenge that evidence due to inconsistencies and some of the confusion in the sequencing of events during the course of the investigation?

A Yes, it did.  Ad there was also some concerns that some of the – most of the allegations were, from the younger victims were concocted or not true at all.  So yes, there was quite a bit of opportunity and there was – as you recall, it was a lengthy trial with a lot of objections in that area.

Q Was there then a decision that the testimony of the younger children could be argued that that was a result of things that they had learned from the older children in the course of the investigation?

A Correct.  And that there was another uncharged individual in the family that might have had a role to play, who testified in the trial, yes.

Q And so in your evaluation then in the overall, as to all of the possible charges the defendant was facing that it was best tactically to not have a motion to sever and to present this during one trial?

A That was the decision that we made, yes.

Q And one of the factors that you – did you take this into consideration that with the counts that were set forth, whatever the results of the case would be, all done in one trial as opposed to the State having the opportunity to try the defendant two or three different times based – if they did it all singularly?
A Yes.  And if there were multiple bites at that apple with subsequent prosecutions, yes, that would not benefit the defendant, correct.

*Id.* at 11-13.  The judge inquired of Mr. Cohen:

THE COURT: And did you discuss this strategy that you've explained, was that actively discussed with co-counsel, Mr. Black?

THE WITNESS: Yes.

THE COURT: Were you both in agreement on the strategy?

THE WITNESS: Yes.

THE COURT: And at some point did you discuss, prior to trial, the strategy of severance and advantages and disadvantages with the defendant?

THE WITNESS: Yes, especially in light of the Crawford and Davis matters, yes.

. . . .

THE COURT: . . . And did he agree to the strategy or defer to your judgment or did he disagree, or do you have a memory of that?

THE WITNESS: We went forward with that strategy so, yes, I would say that we had discussed it and that was – we had many, many meeting with Mr. Johnson, yes.

. . . .

THE COURT: . . . Do you have any specific memory or note on that?

THE WITNESS: The only specific memory I have is based on the Crawford and Davis analysis that we went through with Mr. Johnson, about the strategy that we were going to pursue there, in terms of a specific.  That was a meeting that was at the jail.

THE COURT: Okay.  Do you remember anything specific about anything relating to the decision to proceed to either change and pursue a severance, or not pursue a severance?

THE WITNESS: Nothing specifically, just the concerns about how the evidence would come in or not come in under those various options. Because, as I testified a moment ago, there were many, many, many variables in play at the time in terms of the number of witnesses, in terms of

the stories that were, you know, presented in discovery.  So there were many variables in terms of, you know, one trial, two trials, three trials, one – a trial with a group of witnesses.  There was just multiple variables within which these evidentiary concerns that we were raising were going to apply to one, two, or three, or all, you know, whatever variation or combination might have been the outcome.

THE COURT: All right.  And just so I'm not assuming anything and so the record is perfectly clear, and certainly my understanding is perfectly clear, you, when you came on board or shortly after you came on board in the case, you were in fact aware that the motion to sever had been filed, is that – that's what it sounds like, but I want to be sure I understand correctly.  Is that true?

THE WITNESS: Yes, that's my understanding, that's my memory, yes.

THE COURT: Okay.  And that before the trial these strategies and decisions were made, not after the trial but before the trial.

THE WITNESS: No, no, they were before the trial because of the concerns.

*Id.* at 13-16.

Mr. Black also testified at the hearing:

Q . . . And in the course of your representation of Mr. Johnson, did you and Mr. Cohen sit down and after reviewing all of the discovery, depositions, and some hearings on 803.23 attacks, discuss trial tactics and the upcoming trial before the trial occurred?

A Yes.

Q And in one of those discussions did you-all discuss whether or not you thought that you'd try to sever the cas eand have multiple trials or try to handle all of this in one trial?

A Yes.

Q Okay.  And in your discussions with Mr. Cohen, did you agree with him, was this a mutual agreement between the two of you on the ultimate decision on what would be the best way to handle the trial?

A We had many conversations with respect to preparing for the trial and we always proceeded together in agreement.

*Id.* at 20-21.

The record thus supports the state post-conviction trial court's findings that Johnson's attorneys made a strategical decision to not pursue severance and this did not constitute ineffective assistance.  Although Mr. Johnson testified, "My lawyer never explained to me about a motion to sever," *id.* at 23, the court specifically accepted as "highly credible" the testimony of Mr. Cohen and Mr. Black over that of Mr. Johnson, *id.* Ex. V at 125.  *See, e.g.*, Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (explaining that "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

Johnson has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### <u>Ground 5</u>: Trial Court Error – Failure to Grant Mistrial

In his fifth ground, Johnson asserts the state trial court erred in not declaring a mistrial because of an alleged mistake in the construction of the verdict forms.  Doc. 1 at 11-12.  Johnson states:

> The Petitioner faced a jury of his peers who were sworn under oath to render a fair and just verdict.  Those citizens were divested of the option on count (4) to find the defendant not guilty when the jury instructions, given orally by the Court, gave the panel that option under the law, (See exhibit F).
>
> The verdict form is void and silent as to the option.  The original jury forms are not a part of the record on appeal and the judge did not attach the forms that were originally given to the jury before deliberation.  The precedent on this principle requires the Court to remand for a new trial to vindicate this miscarriage of justice as upheld by our Supreme Court.  This conviction was obtained in violation of the due process clause of the 14th Amendment.  This issue should be reviewed under the plain error doctrine.

*Id.* Johnson indicates he raised this claim as a "Motion for Ineffective Assistance of Counsel."  *Id.* at 12.  He states that he attached a copy of the result.  *Id.*  His attachments reflect that he filed, in the state trial court, a "Great Writ of Habeas Corpus to Correct a Manifest Injustice and Vindicate this Gross Miscarriage of Justice."  *Id.* Ex. F; *see* Doc. 24 Exs. NN, OO.  In the second ground of this filing, Johnson presented the claim of trial court error that he now presents as Ground 5 in this § 2254 petition.  Doc. 24 Ex. NN at 2, 6-8. The state trial court construed the filing as Rule 3.850 motion and summarily denied relief on the merits in an order rendered May 25, 2012, finding:

> Defendant claims that the jury form did not include an option of not guilty and that this is a manifest injustice entitling him to relief.  His claim is refuted by the record.  The trial court provided the jury with five jury forms each with a different verdict, and one of them provided the option of finding the Defendant not guilty.  Exh. 1 – pp. 352-355.  This claim is denied.

*Id.* Ex. OO.  Johnson did not appeal this order, however, and he thus did not exhaust this ground.

Even assuming he did exhaust this ground, it lacks merit.  As Respondent points

out, the state court record supports that court's denial of the claim.   During the trial court's

charge to the jury, the court explained in pertinent part:

> THE COURT: . . . . Now, you may find the defendant guilty as charged in the
> information, or guilty of such lesser included crime as the evidence may
> justify, or not guilty. If you return a verdict of guilty, it should be for the highest
> offense which has been proven beyond a reasonable doubt. If you find that
> no offense has been proven beyond a reasonable doubt, then, of course,
> your verdict must be not guilty.
>
> Now only one verdict may be returned as to each crime charged. The
> verdict must be unanimous; that is, all of you must agree to the same verdict.
> The verdict must be in writing and for your convenience the necessary forms
> of verdict have been prepared for you.
>
> And at this time, I would like to go over them with you.  All of the
> verdict forms are printed on regular size sheets of paper.  They all have the
> name of the case, which we call the style, the name of the court, the case
> number and they say, verdicts.
>
> And what I wanted to do at this time is tell you what the potential
> verdicts – there are five potential verdicts as to each of the three charges
> that are going to be submitted to you for your determination.
>
> The first, as to Count 1, the first potential verdict is guilty as charged
> of sexual battery on a child under the age of 12 by a defendant 18 years of
> age or older. The second possible verdict is guilty of the lesser included
> offense of sexual battery on a child 12 years of age – yeah, 12 years of age
> or younger by a defendant 18 years of age or older – excuse me – under 12
> years by a defendant under 18 years of age. I kind of
> butchered that.
>
> As charged would be, the defendant is over 18 years of age. The first
> lesser included offense would be that the defendant is under 18 years of
> age.
>
> The third potential verdict is guilty of the lesser included offense of
> attempted sexual battery on a child under 12 by a defendant 18 years of age

or older. The fourth potential verdict is battery, guilty of the lesser included offense of battery. <u>And the fifth potential verdict is not guilty as to Count 1</u>.

<u>Now with respect to Counts 2 and 4, they're the same potential five verdicts</u>. Obviously, Count 2 pertains to [M.J.] and Count 4 pertains to [S.J.]. And the potential verdicts in those two counts are: Guilty as charged of lewd and lascivious molestation of a child less than 12 years of age by a defendant 18 years of age or older; guilty of the lesser included offense of lewd or lascivious molestation of a child less than 12 years of age by a defendant under 18 years of age.

The next potential is, guilty of the lesser included offense of attempted lewd or lascivious molestation of a child less than 12 years of age by a defendant 18 years of age or older.

Next is guilty of the lesser included offense of battery. <u>And, of course, the last is not guilty as to Count 2 or Count 4, as the case may be.</u>

Ladies and Gentlemen, whichever of these verdicts you find is supported by the law and the evidence, and when you've all agreed to the same verdict, <u>you should have your foreman sign and date that particular verdict form, leaving the other four verdict forms as to each count blank</u>. Of course, all of them are blank at this time.

Now Ladies and Gentleman, a separate crime is charged in each of the three counts of the information.  And although they have been tried together, each crime, and the evidence applicable to it, must be considered separately and a separate verdict returned as to each.

A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.

Now in just a few moments you'll be taken to the jury room by the bailiff.  The first thing you should do is to elect a foreperson to preside over your deliberations and discussions.  The foreperson presides over your deliberations much like a chairperson of a meeting.  And <u>it's the foreperson's job to sign and date the verdict form when all of you have agreed to the same verdict in this case</u>.

The foreperson will bring the verdict form back to the courtroom when you return. . . .

*Id.* Ex. F at 351-54 (emphasis added); *see id.* at 365 (after jury returned with verdicts and they are announced, and jury leaves courtroom, judge gives clerk "the other verdicts forms which are all blank . . . for filing"). The record thus supports the state court's finding that the trial court provided the jury with five separate jury forms for each of the three counts, each form had a different verdict, and one of the forms had the option of finding Johnson not guilty. From the court's instructions, for each charge, the foreperson signed and dated the verdict form that reflected the jury's unanimous decision and brought that form back to the courtroom. Moreover, after the court clerk read the verdicts, the trial judge directed the clerk to poll the jury and each juror individually answered that the verdict was his or hers. *Id.* at 362; *see* Fla. R. Crim. P. 3.440 (rendition of verdict)

Johnson has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

**<u>Ground 6</u>: IAC – Cumulative Effect of Counsel's Errors**

In his sixth ground, Johnson asserts "[t]he cumulative effect of counsel's errors as presented in the documents filed in Petitioner's behalf deprived petitioner Johnson of his 5th, 6th, and 14th Amend. Due-process, rights to fair trial and effective representation." Doc. 1 at 12. The Eleventh Circuit has rejected such an argument in a § 2254 proceeding.

*See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" but "the Supreme Court has held, in the context of an ineffective assistance of counsel claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).  Moreover, as each of the individual grounds fail, this ground likewise fails.

## Conclusion

Based on the foregoing, Petitioner Matthew Johnson is not entitled to federal habeas relief.  The § 2254 petition (Doc. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining

substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Johnson's § 2254 petition (Doc. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute Julie L. Jones as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on March 27, 2015.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file**

**specific objections limits the scope of review of proposed factual findings and recommendations.**